UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff/Respondent, | ) ) | No. 2:17-CR-28-DLB-HAI |
| v. | ) ) | RECOMMENDED DISPOSITION |
| ISERAL JORDAN GRAYSON, | ) ) | |
| Defendant/Movant. | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal prisoner I. Jordan Grayson ("Grayson") has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. D.E. 35. The Court recognizes that Grayson is proceeding *pro se*, without the assistance of an attorney. The Court construes *pro se* motions more leniently than motions prepared by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003).

Under § 2255, a federal prisoner may seek habeas relief because his sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255. To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

In accordance with local practice, the matter was assigned to the undersigned for the purposes of conducting a preliminary review. *See* Rules Governing Section 2255 Cases, Rule 4.

Under such review, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *Id.*; *see also* 28 U.S.C. § 2255(b) (permitting dismissal of a § 2255 motion when "the files and records of the case conclusively show that the prisoner is entitled to no relief"). This can occur, for example, when the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Because the record conclusively shows Grayson is entitled to no relief on his claims, his motion must be dismissed.

## I. Background and Motion

On March 1, 2018, Grayson pleaded guilty to conspiracy to distribute controlled substances (no quantity specified) containing heroin, fentanyl, and alprazolam that resulted in death. D.E. 20, 21. Judgment was entered November 6, 2018. D.E. 31. Grayson did not appeal. He timely moved for relief under § 2255 on October 23, 2019. D.E. 33. Judge Bunning ordered Grayson to file a completed AO-243 form. D.E. 32. That form was timely filed, and the Court now addresses Grayson's § 2255 form (D.E. 35) along with his original letter (D.E. 33).

Critical to this case is that the record, from the beginning, unambiguously establishes that the death of the victim resulted from the combination of three substances—heroin, fentanyl and alprazolam (a.k.a. Xanax). The indictment alleges that Grayson conspired to distribute "a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and a mixture or substance containing a detectable amount of alprazolam, a

Schedule IV controlled substance." D.E. 3 at 1. The indictment alleges "that death resulted from this distribution of controlled substances." *Id*.

In his plea agreement, Grayson admitted he regularly purchased heroin and alprazolam in Ohio and brought them to Mason County, Kentucky, to use and distribute. D.E. 21 at 2. He admitted he "obtained Xanax and a substance he believed to be heroin on or about September 29, 2016," and brought them to his residence. *Id*. He admitted he "distributed the substances to multiple individuals, including Jazlyn Dudley, on September 29, 2016, at his residence," where "Ms. Dudley voluntarily consumed the substances." *Id*. Ms. Dudley then had trouble staying awake; she fell asleep on Grayson's couch. *Id*. When Grayson awoke the next morning, he found Ms. Dudley dead and called 911. *Id*. She appeared to have "signs of a fatal opiate overdose." *Id*. According to the plea agreement, "An autopsy showed that Ms. Dudley died from a drug overdose from a combination of heroin, fentanyl, and alprazolam. The Defendant admits that Ms. Dudley would not have died if not for the consumption of the substances that he distributed." *Id*.

Grayson's PSR elaborates on the circumstances of the victim's death:

15. On October 14, 2016, a copy of the toxicology report from the state medical examiner's office was sent to the Mason County Sheriff's Office. According to the autopsy report and as listed on the Certificate of Death, Jazlyn Jewell Dudley, died from an acute overdose of combined toxic effects of heroin, fentanyl and alprazolam.

16. On October 18, 2016, toxicology reports indicated that narcotics were present in blood and urine samples taken from Ms. Dudley. Reports confirm that she had alprazolam, THC, Fentanyl, Fentanyl-Quant, Opiates; and, Morphine-Quant. Primary Care Plus records revealed that Ms. Dudley had been prescribed Azithromycin, Flagyl and Sertraline on September 13, 2016.

. . . .

19. Between November 2016 and August 2017, investigation would reveal that Iseral Jordan Grayson[] had purchased Alprazolam and what he

3

>thought was heroin on September 29, 2016 in Cincinnati, Ohio. He admitted to agents that he distributed these substances to multiple individuals, including Jazlyn Dudley, on September 29, 2016, at his residence. Ms. Dudley voluntarily consumed these substances and was aware that she was consuming heroin and Xanax. Ms. Dudley showed signs of difficulty maintaining consciousness after consuming these substances, but eventually went to sleep on the couch at Grayson's residence shortly before mid-night. Mr. Grayson admitted that when he woke up the following morning, he noticed that Ms. Dudley was unresponsive. Mr. Grayson called 911 at 7:03 a.m. on September 30, 2016 and told the dispatcher that Ms. Dudley who spent the night with him had died. . . .

Grayson's § 2255 motion raises a single claim of ineffective assistance of counsel ("IAC"). He alleges his counsel "failed to argue" against the enhanced penalty that applies under 21 U.S.C. § 841 when "death or serious bodily injury results from the use of [the] substance [distributed by the defendant]." D.E. 35 at 4. He states:

> My counsel failed to argue that my § 841 enhancement was invalid. One cause being Ms. Dudley's overdose was from a mixture of downer drugs she consumed [through] the day and night of September 29, 2016[,] not solely because of the heroin she consumed the night of her passing. Therefor[e] my counsel let me plead guilty to a charge where my conduct never contained the necessary elements []. In return giving me a mandatory minimum of two hundred and forty (240) months. One drug Ms. Dudley had in her system the night she passed away was Alprazolam which is not to be taken with any opiates and not to mention it has a high overdose rate itself.

*Id*.

Grayson also states that this claim "was not presented during my court proceeding because my counsel told me it did not [pertain] to me when I brought the 'Burrage' case to their attention and the mixture of drugs in Ms. Dudley['s] system." D.E. 35 at 9. He states in his original letter that he has "learned" his death-resulting enhancement is "invalid pursuant to *U.S. v. Burrage* & *U.S. v. Ewing*." D.E. 33 at 1. He argues that, according to the toxicology report, the victim had Xanax and Zoloft in her system, in addition to the heroin he gave her. *Id*. at 2. He argues, "Th[ere] is no doubt the [Xanax] and Zoloft caused or contributed to Ms. Dudley's

4

death." *Id*. He argues the heroin was thus not an "independently sufficient cause" because it was only part of a "dangerous cocktail" of drugs she had consumed the day of her death.

## II. Legal Standards—Ineffective Assistance of Counsel

To successfully assert an ineffective-assistance-of-counsel ("IAC") claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). To prove deficient performance, a defendant must show "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Strickland*, 466 U.S. at 688. But "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted).

To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. When evaluating prejudice, courts generally must consider the "totality of the evidence." *Strickland*, 466 U.S. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id.* at 697. To demonstrate prejudice in the plea agreement context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To show prejudice in

the sentencing context, a movant must establish that his "sentence was increased by the deficient performance of his attorney." *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

### III. Analysis

Grayson cannot establish either prong of the *Strickland* test because the rule he cites from *Burrage* (an opinion rendered years prior to his guilty plea) would not undermine his death-results enhancement. The Supreme Court stated in *Burrage*:

> We hold that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury.

*Burrage v. United States*, 571 U.S. 204, 218-19 (2014). Accordingly, *Burrage* does not hold that the drug distributed must be "an independently sufficient cause of the victim's death." Instead, the Court specified that, even when the drug distributed is **not** an independently sufficient cause, the enhancement will still apply if the drug distributed is "a but-for cause of the death." *Id*.

The "but-for" causation standard of *Burrage* is satisfied in this case.

> To obtain a conviction after *Burrage*, the government must show the drug distributed by the defendant would have killed the victim independent of other drugs in the victim's system or that the drug caused a death that would not have otherwise occurred. . . . Thus even if the drug in question would not have caused the victim's death on its own, the person who provided the drug is still liable if the drug was the straw that broke the camel's back. In short, *Burrage* only permits overturning a conviction if the defendant shows uncertainty over whether taking the drug produced a death that would not have otherwise occurred.

*Obi v. United States*, No. 18-2442, 2019 WL 6998155, at *4 (6th Cir. Dec. 20, 2019) (citations and quotation marks omitted).

Grayson admits in his plea agreement that he supplied the victim with both what "he believed to be heroin" (apparently heroin laced with fentanyl) and the Xanax. D.E. 21 at 2. He

6

admits the victim knew she was ingesting both heroin and Xanax that he had given her. *Id*. He admits that the autopsy indicated she "died from a drug overdose from a combination of heroin, fentanyl, and alprazolam." *Id*. Finally, Grayson in his plea agreement "admits that Ms. Dudley would not have died if not for the consumption of the substances that he distributed." *Id*. So it is not the case that Grayson only admitted giving her heroin. Nor is he helped by the fact that the autopsy found other drugs in the victim's system. Although Ms. Dudley's blood contained "alprazolam, THC, Fentanyl, Fentanyl-Quant, Opiates; and, Morphine-Quant," the autopsy concluded she died from the combined effects of the alprazolam/Xanax and the heroin-fentanyl. PSR ¶¶ 15-16.

The Sixth Circuit in *Ewing* explained that the death-results enhancement will stick either (1) if the provided drugs are an independent and sufficient cause of the victim's death or (2) if the provided drugs are a but-for cause of the victim's death. *United States v. Ewing*, 749 F. App'x 317, 327-28 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 855 (2019)). In Grayson's case, the cause of death was determined to be the "combined toxic effects of heroin, fentanyl and alprazolam." PSR ¶ 15. The plea agreement agrees: "Ms. Dudley died from a drug overdose from a combination of heroin, fentanyl, and alprazolam." D.E. 21 at 2. Grayson admitted he supplied the heroin (apparently laced with fentanyl) and the alprazolam/Xanax. *Id*. Thus, the undisputed facts of this case establish that the drugs Grayson gave Ms. Dudley were both an independent and sufficient cause of her death and (at the very least) a but-for cause. "[W]here use of the controlled substance combines with other factors to produce death, and death would not have occurred without the incremental effect of the controlled substance, but-for causation exists." *Ewing*, 749 F. App'x at 327 (citation and quotation marks omitted). Put succinctly, the

7

drugs which combined to cause the victim's death were precisely the same drugs Grayson admitted giving her. D.E. 21 at 2.

Grayson does not argue in his current motion that the factual statement in his plea agreement was inaccurate or that his guilty plea was involuntary. *See Blackledge v. Allison*, 431 U.S. 63, 71-75 (1977); *Ramos v. Rogers*, 170 F.3d 560, 563-64 (6th Cir. 1990). He is therefore bound to his sworn statements in his plea agreement. And his sworn admissions establish the victim died from ingesting a *combination* of drugs, *all of which* she obtained from Grayson. D.E. 21 at 2 ("The Defendant admits that Ms. Dudley would not have died if not for the consumption of the substances that he distributed."). *Burrage*'s but-for causation test in no way undermines Grayson's sentence.

### IV. Conclusion

"[T]he motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C.A. § 2255(b). Because "it plainly appears . . . that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings, Rule 4. The undersigned therefore **RECOMMENDS** that Grayson's § 2255 motion be **DISMISSED** upon initial review. The cases he attempts to rely upon would not have undermined his death-results enhancement. Therefore, counsel could not have been ineffective for failing to argue against that enhancement on the basis of either *Burrage* or *Ewing*.

This case does not warrant an evidentiary hearing. An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b); s*ee also Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual

8

allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474, 127 S. Ct. 1933, 1940, 167 L. Ed. 2d 836 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. In this case, the record "conclusively show[s]" Grayson is entitled to no relief. *Arredondo*, 178 F.3d at 782.

The undersigned further **RECOMMENDS** that no Certificate of Appealability issue. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See also* Rule 11 of the Rules Governing Section 2255 proceedings. This standard is met if the defendant can show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Here, no reasonable jurist would find the assessments on the merits above to be wrong or debatable. Grayson raises a discrete issue, and his analysis of that issue is legally erroneous.

Any objection to, or argument against, dismissal must be asserted **before the District Judge** in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court

and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 30th day of December, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge